## USDC DOCKET NO. EDCV 5:13-01430-DDP

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

In re:

KEVIN WALKER,

Debtor.

BAYER WISHMAN & LEOTTA

Appellant

v.

ROD DANIELSON, Chapter 13 Standing Trustee, and KEVIN WALKER

Appellees

APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA, RIVERSIDE DIVISION
Bankr. Case No. 6: 09-28706-WJ
Related to U.S.D.C. Appeal No. EDCV13-01431-DDP (In re Tyrone Macey)

## APPELLEE ROD DANIELSON'S OPENING BRIEF

Joey DeLeon, SBN 150974
Office of Rod Danielson, Chapter 13 Trustee
3787 University Avenue
Riverside, California   92501
Telephone:  (951) 826-8016
Fax:  (951) 826-8090
Email: joey@rodan13.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………….   iii

STATEMENT OF JURISDICTION ………………………………………..   1

STANDARD OF REVIEW ………………………………………………   1

STATEMENT OF ISSUES ………………………………………………   1

STATEMENT OF THE CASE ……………………………………………  1

ARGUMENT

    1.  DID THE BANKRUPTCY COURT ERR IN APPLYING THE
    THE APPROPRIATE LEGAL STANDARD GOVERNING FEE
    APPLICATIONS ………………………………………………………   1

    2.  DID THE BANKRUPTCY COURT ERR IN NOT CONSIDERING
    /APPLYING THE "LODESTAR" STANDARD IN RULING ON THE
    FEES AND COSTS REQUESTED ………………………………………9

    3.  DID THE BANKRUPTCY COURT ERR IN ADOPTING THE
    THE TRUSTEE'S RECOMMENDATION THAT $600 IS
    "CUSTOMARY AND REASONABLE" FOR SUPPLEMENTAL
    FEES IN THE CENTRAL DISTRICT OF CALIFORNIA FOR
    ADDITIONAL LEGAL SERVICES IN A CHAPTER 13 CASE        14

    4.  DID THE BANKRUPTCY COURT ABUSE ITS DISCRETION
    WHEN IT DISALLOWED PART OF THE REQUESTED FEES AND
    COSTS BY APPLYING A FLAT $600 ALLOWANCE ……………..……15

CONCLUSION ………………………………………………………….……17

CERTIFICATE OF COMPLIANCE …………………………………………19

CERTIFICATION OF INTERESTED PARTIES ……………………………..20

STATEMENT OF RELATED CASES …………………………………………..21

i

ADDENDUM …………………………………………………………………22

CERTIFICATE OF SERVICE ………………………………………………23

# TABLE OF AUTHORITIES

## CASES

*Barjon v. Dalton,* 132 F.3d 496 (9th Cir. 1997).......................................................4

*Bell v. Clackamas County*, 341 F.3d 858 (U.S.C.A. 9th Cir, 2003)…………..…...3

*Blum v. Stenson*, 465 U.S. 886 (1984)…….………………………………….…3,4

*Boddy v. U.S. Bankruptcy Ct.,* 950 F.2d. 334 (6th Cir 1991)……………..……… 10

*Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973 (9th Cir. 2008)…….………….4

*Carson v. Billings Police Dep't*, 470 F.3d 889 (9th Cir. 2006).…………………3,4

*Chalmers v. City of Los Angeles,* 796 F.2d 1205 (9th Cir. 1986)…………………4

*Davis v. Mason County,* 927 F.2d 1473 (9th Cir. 1991)…………………………..4

*Hensley v. Eckerhart*, 461 U.S. 424; 103 S.Ct. 1933; 76 L.Ed.2d 40 (1983)……9

*In re Argento,* 282 B.R. 108 (Bankr.D.Mass.2002)……. …………………………15

*In re Eliapo,* 468 F.3d 592 (U.S.C.A. 9th Cir. 2006)………………………..12-13

*In re Gianulias*, 111 B.R. 867 (U.S.D.C.  E.D. CA, 1989)……………………….5

*In re Szymczak,* 246 B.R. 774 (Bankr.D.N.J. 2000)…………………………….6,7

*In re Yermakov,* 718 F.2d 1465 (9th Cir. 1983) ………………….……………….10

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d. 714 (5th Cir 1974)……...11

*Schwartz v. Secretary of HHS*, 73 F.3d 895 (9th Cir. 1995)………………….…4

*United States v. Hinkson,* 585 F.3d. 1247 (9th Cir 2009)(en banc)…………..…16

*United Steelworkers  v. Phelps Dodge Corp*., 896 F.2d 403 (9th Cir. 1990)……4

*Unsecured Creditors' Comm. v. Puget Sound* 924 F.2d 955 (9th Cir.1991)......10

## STATUTES

11 U.S.C. §330(a)……………………….……………………….………2, 3, 11,13,17

## RULES

F.R.A.P Rule 28(b)………..…………………………………………………….1
F.R.B.P. Rule 8010(a)(2)…..……….….………………………..…………………1
Local Bankruptcy Rule Appendix IV …………...………………………1, 2, 12
Local Bankruptcy Rule 3015-1……………………………………………..…1

iv

Appellee, Rod Danielson (hereinafter referred to as "Trustee"), by and through its counsel of record, hereby submits the following brief.

## STATEMENT OF JURISDICTION

No revisions necessary per F.R.B.P. Rule 8010(a)(2), and F.R.A.P. Rule 28(b)(1).

## STANDARD OF REVIEW

No revisions necessary per F.R.A.P. Rule 28(b)(5).

## STATEMENT OF ISSUES

No revisions necessary per F.R.B.P. Rule 8010(a)(2) and F.R.A.P. Rule 28(b)(2).

## STATEMENT OF THE CASE

No revisions necessary per F.R.B.P. Rule 8010(a)(2) and F.R.A.P. Rule 28(b)(3).

## ARGUMENT

### I.

### DID THE BANKRUPTCY COURT ERR IN APPLYING THE APPROPRIATE LEGAL STANDARD GOVERNING FEE APPLICATIONS

Central District of California Local Bankruptcy Rule 3015-1 [Appellant's Excerpts of Record (hereinafter "ER"), tab 14, pgs 228-229], which applies to Chapter 13 cases (the "Local Rules"), and Appendix IV to the Local Rules [ER tab 14, pg 233], provide that attorneys may seek fees up to $4,000 ($5,000 in a

1

"business" case) for pre-confirmation Chapter 13 services without submitting a detailed fee application under 11 U.S.C. §330(a) (these fees are customarily called "no-look" or "presumptive" fees). However, counsel is not required to accept the "no-look" fee procedure. Appendix IV states that if a Chapter 13 practitioner does not wish to apply for fees under the no-look guidelines, or if the attorney has already submitted a no-look application and received presumptive fees (which is the situation in this case), he or she may seek additional fees by submitting a detailed fee application in accordance with 11 U.S.C. §330(a).

11 U.S.C. §330(a) provides that the court may award <u>reasonable</u> compensation for services rendered based on a consideration of the benefit and necessity of such services to the debtor and shall take into account all relevant factors including (but which are not limited to): (a) the time spent on such services; (b) the rates charged for such services; (c) whether the services were necessary or beneficial to the administration of the case, (d) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task, (e) whether the person is board certified or has demonstrated skill and experience in the bankruptcy field, and (f) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners. In addition, §330(a)(2) states that <u>the court may award compensation that is less than the</u>

2

amount requested. A detailed fee application submitted in accordance with §330(a) is typically calculated using the "lodestar" method (under which 'the number of hours reasonably expended' is multiplied by 'a reasonable hourly rate' for the person providing the services).

However, §330(a) is not the end of the inquiry. Under applicable case law, additional factors must be considered in evaluating a fee request. The Supreme Court in the case of *Blum v. Stenson*, 465 U.S. 886, 896 (1984), held that an attorney seeking fees must;

> ". . . justify the reasonableness of the requested rate or rates. To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence -- in addition to the attorney's own affidavits -- that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to -- for convenience -- as the prevailing market rate." (Emphasis added)

See also *Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (U.S.C.A. 9th Cir. 2006) (the prevailing market rate of the relevant community is the standard), and *Bell v. Clackamas County*, 341 F.3d 858, 868 (U.S.C.A. 9th Cir, 2003) (a court awarding attorney fees must look to the prevailing market rates in the relevant community, and has the discretion to apply the rates in effect at the time the work was performed). Therefore, the relevant community and the prevailing market

3

rate in that community for the work performed are crucial to determining the reasonableness of the fees requested.

Case law provides that the relevant community is the forum in which the district court sits [see *Barjon v. Dalton*, 132 F.3d 496, 500 (U.S.C.A. 9th Cir. 1997) citing *Davis v. Mason County*, 927 F.2d 1473, 1488 (9th Cir. 1991); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (U.S.C.A. 9th Cir. 2008); and *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (U.S.C.A. 9th Cir. 1990)]. In the within case, the relevant community is the Riverside Division of the Central District of California (which handles all bankruptcy cases filed in Riverside and San Bernardino Counties).

The next inquiry is "What is the prevailing market rate in that area?" Case law provides that the standard is the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation [see *In re Barjon,* supra, at p. 502, citing *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986); *Schwartz v. Secretary of HHS*, 73 F.3d 895, 908 (U.S.C.A. 9th Cir. 1995)].

As stated above, it is the applicant that has the burden of showing that the fees requested are consistent with the prevailing market rate in the local community (*Blum*, supra at p. 896 and *Carson*, supra, at p. 891). Appellant's fee application in this case contained no evidence whatsoever of the prevailing market

4

rates in the community. In the absence of evidence of the cost in the community

of comparable services, trial courts have substantial flexibility and wide discretion

in awarding attorney's fees, and may reduce or deny a request for fees, and such a

response is not an abuse of discretion or an erroneous application of the law. See

*In re Gianulias*, 111 B.R. 867, 869 (U.S.D.C. E.D. CA, 1989).

The Bankruptcy Court in the within case; (1) compiled a list of 125 cases

where fee applications were filed seeking compensation for the <u>exact same task</u> as

in the present case, (2) determined the prevailing market rate for the task in the

community, and (3) determined that the fees requested by Appellant were higher

than the average fee for the exact same task:

> "In this particular instance with this particular fee application
> addressing this particular type of task I've – we've been keeping track
> for about two years now of all applications for supplemental fees in
> Chapter 13 cases. We've compiled a list of 125 instances where a fee
> application has been filed seeking compensation for the same task as
> in this case, filing a declaration in response to a status conference
> hearing. And in – as I said, we found 125 instances. Those are the
> instances that we could find in which the fee application covered the
> one task only of preparing and filing a declaration in response to a
> status conference order. There are undoubtedly other fee applications
> that have been filed in other case which lump that task in with other
> tasks and I've excluded that for the purpose of this analysis. But the
> 125 is certainly the vast majority of instances in which compensation
> has been sought for this particular task . . . In 89 of the 125 instances
> the fees requested were $600 and the fees approved were $600. In 25
> instances less than $600 was requested ranging from $250 at the
> bottom end to $530.16 at the high end for the 25 application that were
> under $600. At the other end of the spectrum there were 11 fee
> applications of more than $600 and those range from $625 to $900, so
> your fee applications were by far the highest. . . . I haven't had any

other than yours that exceed $1,000, only 11 exceed $600 and only
three exceed $800.  The average request of all 125 applications is
$565 and the average allowance is $551.  So really, what you're
asking for is almost three times – two to three times, depending on
whether it's Walker or Macey, the amounts requested."

[Transcript, ER Tab 13(a), p. 204, l.6 thru p. 205, l. 20].  A list of the 125 cases

identified by the Bankruptcy Court is attached as Exhibit 1 to the Order being

appealed (see E.R. Tab 2, pages 22-32).  The Court awarded Appellant fees of

$600 based upon the prevailing market rate for the task in the Riverside Division.

Appellant asserts, at p.10, l.8–11 of his opening brief, that the marketplace

norm for determining the reasonableness of a fee application "is determined by

what an informed client and informed attorney would agree should be paid for

certain services" (citing *In re Szymczak*, 246 B.R. 774, 781 (Bankr. D.N.J. 2000),

and infers that, inasmuch as the Debtor approved the fees requested, they should

be deemed reasonable.  First, *Szymczak* is a New Jersey bankruptcy case, and has

only limited persuasive value in this district.  Second, what the *Szymczak* Court

actually said was slightly different:

"If the marketplace naturally establishes a price for a service, then we
believe that it is logical to assume that this is the figure to which an
informed client and an informed attorney would agree." (*Szymczak*,
supra at p. 781).

In other words, it is the marketplace that should determine the agreement, not the

agreement that determines the marketplace norm.  Third, the *Szymczak* Court's

discussion at page 778 is of interest:

6

"The bankruptcy court has a duty to review fee applications, notwithstanding the absence of objection the United States trustee, creditors, or any other interested party . . . *In re Busy Beaver Bldg. Ctrs, Inc. 19 F.3d 833,841 (3d Cir. 1994)*. This overriding obligation to examine fee application derives from the Court's commitment to "protect the estate, lest overreaching attorneys or other professionals drain it of wealth which by right should inure to the benefit of unsecured creditors" . . . Although the court has a duty to fairly compensate counsel it also has a responsibility not to overly compensate attorney to the detriment of the debtor and the creditors. *In re Taylor, 100 B.R. 42,45 (Bankr D. Colo 1989). . . .*

The court's responsibility to protect the estate is especially important in chapter 13 cases where there is little motivation for a debtor, or creditors, to object to a particular fee allowance. From the point of view of the debtor, the amount to be paid under the plan is fixed at confirmation, and it is of no real consequence to the debtor whether the money is paid to the attorney or the creditors. In addition, there is little or no economic incentive for most creditors in Chapter 13 cases to object to fees; the cost of the objection will likely exceed any additional distribution they may receive." *In re Yates*, 217 B.R. 296, 300 (Bankr. N.D. Okla. 1998) (citing *In re Copeland*, 154 B.R. 693, 697-98 (Bankr. W.D. Mich. 1993)). See also *In re Stromberg*, 161 B.R. 510, 517 (Bankr. D. Colo. 1993)."

The *Szymczak* Court also discussed at page 779 that:

". . . the lodestar is, at bottom, a means of attempting to put a market rate on particular legal services in a lawsuit, and that a lodestar analysis is unnecessary and may in fact be misleading when a real market rate for certain routinized services exists and can be used directly as a means of measurement of the market rate. Simple use of the lodestar method for determining fees for debtors' attorneys in chapter 13 cases does not lead to an acceptable and reasonable outcome." [citing in *In re Patronek*, 121 B.R. 728, 731-32 (Bankr. E.D. Pa. 1990)].

In this case, a real market rate exists for the exact task for which Appellant sought compensation.  The Court conducted an independent study to determine

what the market rate was, and used it to make a determination of the reasonableness of Appellant's fees.   The fact that the Court complimented Appellant on the quality of his work does not warrant fees that exceed the prevailing market rate.  The Bankruptcy Court's Order Setting Status Conference [ER Tab 6, page 45-48] is the same in each Chapter 13 case, and the requirements for preparing the status report are the same for each attorney in every case. Appellant was not required to do anything more in this case than what is required of other attorneys in other Chapter 13 cases, nor did Appellant's fee application contain any facts or evidence that the Status Report in this case was any more difficult or time consuming than the Status Reports prepared by other local attorneys in the Riverside Division.   Extrapolating payment information from bank statements and other documents provided by the Debtor, redacting sensitive information, and inserting the data into a spreadsheet are routine tasks associated with the preparation of a Status Report.  In most cases, these routine tasks can readily be performed by a non-attorney at a lesser hourly rate, as opposed to a seasoned attorney who bills at $350 an hour.   Counsel has a duty to preserve the assets of the estate, and draining the estate by charging unnecessary fees is a breach of that duty.  The Bankruptcy Court in this case noted that:

///

8

> ". . . this is a fairly routine task and I just don't want to create a precedent where on these fairly routine tasks I have tranches [sic] of fees that I routinely grant. I think the Trustee has identified good numbers for fee applications, which work the vast majority of the time." [Transcript: ER 13(a), pg 206, lines 15:19].

Appellant provided no evidence whatsoever of the prevailing market rate for the task at hand, despite it being his burden to do so, and failed to provide any facts or evidence that would justify a fee award that was higher than the prevailing market rate. Rather than denying Appellant's deficient fee application in its entirety, the Bankruptcy Court, using its own independent study of the prevailing market rate for the exact same task in the Riverside Division, awarded reasonable fees based on the prevailing market rate. Therefore, the Court did not err in the application of the appropriate legal standard to Appellant's fee application.

## II.

## DID THE BANKRUPTCY COURT ERR IN NOT APPLYING THE "LODESTAR" STANDARD IN RULING ON THE FEE APPLICATION

Appellant argues that the Bankruptcy Court erred by using a "no-look" standard instead of the "lodestar" standard in determining an award of attorney fees in a Chapter 13 bankruptcy case (Appellant's Brief at p. 11), citing *Hensley v. Eckerhart*, 461 U.S. 424, 433; 103 S.Ct. 1933; 76 L.Ed.2d 40 (1983). But *Hensley* merely states that the 'number of hours reasonably expended multiplied by a reasonable hourly rate' is the starting point. *Hensley* does not say that the lodestar

method is the <u>mandatory</u> method, nor does it say that is it the <u>only</u> method. Interestingly, Appellant then contradicts his own position at p. 12 of his brief by pointing out (correctly) that although the lodestar method for calculating fees is customary, it is <u>not</u> mandatory (citing *Unsecured Creditors' Comm. v. Puget Sound Plywood, Inc.*, 924 F.2d 955, 960 (9th Cir.1991)). Indeed, the *Puget* court recognized, at p. 960 that, although starting with the lodestar is the primary method for calculating fees, it is not mandated in all cases, and that <u>'primary' is not a synonym for 'exclusive'</u> (citing *In re Yermakov*, 718 F.2d 1465, 1471 (9th Cir. 1983) (emphasis added). In addition, the *Puget* court stated, at page 961, that if a fee application is inadequate [as was Appellant's application in this case for failure to provide evidence of prevailing market rate in the area]:

> ". . . the court should not be forced to wade through it in order to calculate the 'lodestar'. Thus the bankruptcy court did not abuse its discretion by using an alternative fee formula . . .".

Appellant acknowledges in his brief [at p. 14-15] that the only case which stands for the proposition that a lodestar analysis is necessary for all fee applications is *Boday [sic] v. U.S. Bankruptcy Court, Western District of Kentucky*, 950 F.2d. 334 (U.S.C.A. 6th Cir 1991), which is not binding upon this Court, and also acknowledges that there is a growing trend across the country to depart from the use of the lodestar method in Chapter 13 cases.

10

Appellant further argues that the Court erred in not applying the twelve factors listed under *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d. 714 (U.S.C.A. 5th Cir 1974). Once again, Appellant is relying upon a case which is not binding upon this Court. However even the *Johnson* case requires a court to consider the customary fee for similar work in the community (factor 5) [*Johnson*, supra, at p. 718], and awards made in similar cases within the Court's circuit (factor 12) [*Johnson*, supra, at p. 719]. In the within case, the Bankruptcy Court did just that; it made an independent study of 125 fee applications in the Riverside Division for the exact same task that was performed by Appellant, and determined the customary fee.

Appellant also argues that the Central District Local Rules <u>mandate</u> a §330(a) analysis on the fee application and application of the lodestar [Appellant's brief at p. 19]. This is not quite true. While the Local Rules require an attorney to file and serve an application for fees in accordance with 11 U.S.C. §330(a), nowhere in the Local Rules or Appendix IV does it prohibit the Bankruptcy Court from going beyond the four corners of a fee application to determine the reasonableness of the fees requested, particularly when (as is this case here) the applicant fails to provide evidence of the prevailing market rate. Further, §330(a)(2) specifically <u>permits the Court to award fees that are less than the amount requested if the Court finds that the fees requested are unreasonable.</u>

11

In the Riverside Division of the Central District of California, the custom and practice has evolved over the years that the vast majority of local Chapter 13 Bankruptcy practitioners submit "no-look" or "presumptive fee" applications for post-confirmation work, even though the Central District has not published established fee guidelines for routine post-confirmation services. As discussed by the Court in *In re Eliapo*, 468 F.3d 592, 599 (U.S.C.A. 9th Cir., 2006), such "no look" or "presumptive" fees have numerous advantages for both the court and the attorneys:

> "Such presumptive fees, if set at an appropriate level, have a number of virtues. First, use of presumptive fees in a no-look application saves attorney time that would otherwise be spent preparing detailed applications using the lodestar method. Saving attorney time has the potential, perhaps even likely, consequence of lowering attorney's fees.

> Second, use of presumptive fees encourages efficient use of attorney time by providing fair compensation to efficient practitioners and by preventing inefficient practitioners from passing on the cost of their inefficiency. As stated by Judge Lundin,

> > 'Three or four hours of attorney time and a like number of hours of paralegal time in an experienced debtors' attorney's office can produce excellent results in a "typical" Chapter 13 case. Another lawyer who less regularly handles Chapter 13 cases might double or triple the time investment to produce the same or less desirable results. Applying normal lodestar methodology can penalize the efficient volume counsel by reducing the fee in each case while rewarding the inefficient practitioner with higher fees.' (citing Keith M. Lundin, Chapter 13 Bankruptcy §294.1 at 294-22 to -23 (3d ed. 2000, & Supp. 2004)

12

> . . . Fourth, use of presumptive fees saves time that a busy bankruptcy
> court would otherwise be required to spend dealing with detailed fee
> applications.  As stated by the BAP in this case, '[T]he sheer volume
> of chapter 13 cases and the rarity of creditor or debtor objections to
> attorney's fees in such cases make court review of each fee application
> or fee arrangement administratively burdensome.  *Eliapo II, 298 B.R.
> at 399*; *see also* 4 Lundin, *supra*, §294.1, at 294-25 to -26 ("It is
> almost inconceivable that bankruptcy courts would engage in full-
> scale lodestar calculation of debtors' attorneys' fees in every Chapter
> 13 case, especially in districts with high-volume Chapter 13
> programs.")."

None of the cases cited by Appellant state that a court may depart from the lodestar analysis <u>only if</u> there is a local rule that adopts presumptively reasonable "no-look" fees for a given task.  The bankruptcy attorneys in the Riverside Division typically submit no-look fee applications, as opposed to §330(a) lodestar applications, for post-confirmation work in Chapter 13 cases despite the fact that the Local Rules do not contain any presumptively reasonable fees for such work. Based upon the Bankruptcy Court's independent study of 125 fee applications in the Riverside Division for the exact same task, the Bankruptcy Court determined the prevailing market rate for the task, and awarded fees consistent with the prevailing market rate.  Appellant's fee application provided no facts or evidence that the prevailing market rate was higher than the amount as determined by the Court, or that the facts or circumstances of this case warranted an award that was higher than the prevailing market rate.  Absent such evidence, the Bankruptcy

Court had wide discretion in awarding reasonable fees, and did not err in ruling on Appellant's application for fees and costs.

**III.**

**DID THE BANKRUPTCY COURT ERR IN ADOPTING THE TRUSTEE'S RECOMMENDATION THAT $600 IS "CUSTOMARY AND REASONABLE" FOR SUPPLEMENTAL FEES IN THE CENTRAL DISTRICT OF CALIFORNIA FOR ADDITIONAL LEGAL SERVICES IN A CHAPTER 13 CASE**

Appellant complains that the Court adopted a "normal and customary" standard contrived by the Trustee, which is only applicable in instances where there is an established "no-look" fee adopted by the Court for the services rendered, and inasmuch as the Local Rules for the Central District do not contain any written "no-look" fees for post-confirmation services, the Court erred in adopting the Trustee's recommendation of $600.   Appellant cites *In re Argento,* 282 B.R. 108, 116–17 (Bankr.D.Mass.2002), which adopted an 'initial fixed fee standard' for usual services inherent in any routine chapter 13 case, and a 'lodestar method' for services which <u>exceed the routine tasks</u>.  Although *Argento* is not 9th Circuit binding authority, to the extent this Court may find *Argento* persuasive, it should be noted that the Bankruptcy Court in this case made an express finding that the services performed for which Appellant sought compensation were a

14

"routine task" [Transcript, ER tab 13(a), p.206, l.15].  There is nothing in Appellant's fee application which evidences that the task he performed was anything more than routine.  Therefore, a more complex lodestar analysis is not required even under *Argento*.

The Bankruptcy Court in this case did <u>not</u> rule on the fee application based strictly upon the Trustee's recommendation.  Inasmuch as Appellant provided no evidence of prevailing market rate (as was his burden), the Bankruptcy Court had wide discretion to use an alternative method of determining a reasonable fee, and relied upon its own independent study of 125 applications for fees for the exact same task.  After determining the prevailing market rate in the Riverside Division for the subject task, the Bankruptcy Court made a fee award based upon the prevailing market rate. While that fee award was consistent with the Trustee's recommendation, the record is clear that the Bankruptcy Court's ruling was not based upon the Trustee's recommendation, but rather a wholly independent method of determining the prevailing market rate for the task.  Therefore, the Bankruptcy Court did not err when it awarded fees.

## IV.

## DID THE BANKRUPTCY COURT ABUSE ITS DISCRETION WHEN IT DISALLOWED PART OF THE REQUESTED FEES

Under *U.S. v. Hinkson*, 585 F.3d 1247 (U.S.C.A. 9th Cir. 2009), the 9th Circuit adopted a two-part test to determine whether a district court has abused its discretion.   The first step of the test is to determine whether the trial court identified the correct legal rule to apply to the relief requested.   If the trial court identified the correct legal rule, then the second step is to determine whether the trial court's application of the legal standard was "illogical", "implausible", or without support in inferences drawn from the facts in the record.

1. Did the Bankruptcy Court apply the correct legal standard?  As discussed above, the Bankruptcy Court had a duty to award reasonable fees viewed in light of the prevailing market rate for practitioners in the relevant community (which is the Riverside Division of the Central District, where the Bankruptcy Court is located). The Appellant had the burden to provide the Bankruptcy Court with evidence of the prevailing market rate, but failed to provide any such evidence.   The Bankruptcy Court, on its own, conducted an independent study of 125 fee applications where fees were sought for the exact same task that was performed by Appellant, determined the prevailing market rate, and awarded fees to Appellant consistent with the prevailing market rate.   Appellant did not dispute the Bankruptcy Court's determination of the prevailing market rate, and did not request a continuance to submit additional evidence of the prevailing market rate.

16

Therefore, the Bankruptcy Court applied the correct legal standard in ruling on Appellant's fee application.

2. _Was the court's application illogical, implausible, or unsupported?_  It is clear from the record that the Bankruptcy Court made a very thorough, deliberate, and careful study of 125 fee applications (which sought compensation for the <u>exact</u> same task only) before making a determination of the prevailing market rate for the task at hand.  Therefore, the Bankruptcy Court's award of attorney fees based upon an application of the prevailing market rate was not illogical, implausible, or unsupported.

**CONCLUSION**

11 U.S.C. §330(a) provides that a court may allow <u>reasonable</u> compensation to a debtor's attorney for representing the interests of the Debtor.  Controlling 9th Circuit authority requires that, in determining the reasonableness of fees requested, the Court must consider the prevailing market rate for similar work performed by attorneys of comparable skill, experience, and reputation in the relevant community (in this case, the Riverside Division of the Central District of California), and that the burden is on the <u>fee applicant</u> to provide evidence of the prevailing market rate, failing which the Court has wide discretion in awarding fees.  Appellant's fee application failed to provide any evidence whatsoever of the prevailing market rate for the task performed.  The Bankruptcy Court, relying on

17

its own independent study of 125 Chapter 13 cases in which fees were requested for the exact same task that was performed by Appellant, determined the prevailing market rate, and awarded fees consistent with that rate. Therefore, the Bankruptcy Court applied the correct legal standard, did not abuse its discretion in reaching its decision, and its award of attorneys' fees should not be disturbed, and should be affirmed.

Respectfully Submitted,

Dated:  September 19, 2013

Joey DeLeon
Staff Attorney for Rod Danielson
Chapter 13 Trustee

18

## CERTIFICATE OF COMPLIANCE WITH
## TYPE-VOLUME LIMITATION, TYPEFACE
## REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.     This brief complies with the type-volume limitation of F.R.A.P. 32(a)(7)(B) because:

☒     this brief contains __4,442__ words, excluding the parts of the brief exempted by F.R.A.P. 32(a)(7)(B)(iii), *or*

☐     this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by F.R.A.P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of F.R.A.P. 32(a)(5)and the type style requirements of F.R.A.P. 32(a)(6) because:

☒     this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14 point Times New Roman, *or*

☐     this brief has been prepared in a monospaced spaced typeface using _____ with _____.

Signature:   _____

Joey DeLeon
Staff Attorney for Appellee Rod Danielson
Chapter 13 Trustee

Date:      September  19, 2013

19

## CERTIFICATION OF INTERESTED PARTIES

The undersigned, counsel of record for Appellee Rod Danielson, Chapter 13 Trustee, certifies that the following listed party (or parties) may have a pecuniary interest in the outcome of this case.  These representations are made to enable the Court to evaluate possible disqualification or recusal.

Appellant, Bayer Wishman & Leotta

Debtor and Appellee, Kevin Walker

Date:  September 19, 2013

Joey DeLeon, Esq.
Staff Attorney for Appellee
Rod Danielson, Chapter 13 Trustee

20

## STATEMENT OF RELATED CASES
### Per L.R 83-1.3.1

Appellee Rod Danielson, Chapter 13 Trustee, gives notice of the following related case which is currently pending before the District Court, and which arises from a closely related event, and calls for a determination of substantially related or similar questions of law and fact, and would otherwise entail a substantial duplication of labor if heard by different judges.

Bayer Wishman & Leotta v. Rod Danielson and Tyrone Macey
EDCV 5:13-01431-DDP (Appeal from Bankruptcy Case No. 6:10-19811-WJ)

Appellant, Bayer Wishman and Leotta is the attorney for the Debtor in both the within case and the related case. The order being appealed in each case relates to Appellant's application for supplemental attorney's fees sought in connection with Appellant's attendance at a Status Conference hearing set by the Bankruptcy Court, and Appellant's preparation of a declaration in response thereto. The hearings on both fee applications were held on the same date (July 29, 2013), and heard by the same Bankruptcy judge (Honorable Wayne Johnson), at the same time (the Judge calling both matters on the calendar at the same time).

Dated:    September 19, 2013

Joey DeLeon
Staff Attorney for Rod Danielson
Chapter 13 Trustee

21

## **ADDENDUM**

ALL APPLICABLE CODES, STATUTES, AND RULES ARE CONTAINED IN THE BRIEF OR ADDENDUM OF APPELLANT

## CERTIFICATE OF SERVICE

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Riverside, State of California, and not a party to the above-entitled action.  On September 19, 2013  I served a true and correct copy of **APPELLEE ROD DANIELSON'S OPENING BRIEF** on the person(s) indicated below in the manner as provided in FRCivP 5(b); by depositing it in the United States Mail in Riverside, California, in a sealed envelope with the postage thereon fully prepaid as follows:

**JUDGE'S COPY**
Honorable Dean D. Pregerson
United States District Court
312 North Spring Street, Room 244-J
Los Angeles, CA   90012-4701

**APPELLANT'S COPY**
Marcus G. Tiggs, Esq.
Bayer Wishman and Leotta
1055 Wilshire Blvd., Suite 1900
Los Angeles, CA  90017

**APPELLEE'S COPY**
Kevin Walker
12466 Canal Drive, No. 5
Rancho Cucamonga, CA  91739

Please check one of these boxes if service is made by mail:

☐   I hereby certify that I am a member of the Bar of the United States District Court, Central District of California.

☒   I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

☒   I hereby certify under the penalty of perjury that the foregoing is true and correct.

Executed on September 19, 2013 at Riverside, California.

Signature: _Susan Jones_
Susan Jones

23